669 P.2d 102

Pearl M. ISRAEL, Petitioner Employee,

v.

The **INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

Francisco Grande Resorts, Inc.,
Respondent Employer,

Aetna Fire Underwriters Insurance
Company, Respondent Carrier.

No. 1 CA–IC 2855.

Court of Appeals of Arizona,
Division 1, Department C.

April 26, 1983.

Rehearing Denied July 26, 1983.

Review Denied Sept. 15, 1983.

Davis, Eppstein & Hall, P.C. by Philip Hall, Tucson, for petitioner employee.

James A. Overholt, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by Donald L. Cross, Larry L. Smith, Brian C. Bond, Phoenix, for respondent employer and respondent carrier.

## OPINION

OGG, Judge.

In this special action review of an Industrial Commission award suspending benefits we examine: first, the legal effect of an order of the Industrial Commission condi-

tioning approval to leave the state upon a requirement that the worker return to the state at her own expense upon any and all requests of the carrier; specifically, whether such a condition can obviate the requirement of A.R.S. § 23–1026[1] that medical examinations be held at a time and place reasonably convenient to the employee; and second, whether the award in this case is legally and factually correct.

We find that the conditional permission to leave the state did not allow the carrier to arbitrarily schedule medical examinations without meeting the requirements of A.R.S. § 23–1026. We have also determined that the award suspending benefits in this case is incorrect under the applicable law.

Therefore, the award must be set aside.

Following an industrial injury, which was accepted for benefits, petitioner employee Pearl Israel requested permission from the Industrial Commission to move to Prattville, Alabama, where her daughters reside. She also asked that Gary E. Phillips, M.D., of Montgomery, Alabama, an orthopedic physician, become her treating physician.

By findings and order issued August 14, 1980, the Industrial Commission granted permission to leave the state, pursuant to A.R.S. § 23–1071[2] and approved petitioner's change of physicians.

1. § 23–1026. Periodical medical examination of employee; effect of refusal or obstruction of examination or treatment.

A. An employee who may be entitled to compensation under this chapter shall submit himself for medical examination from time to time at a place reasonably convenient for the employee, if and when requested by the commission, the state compensation fund, his employer or the insurance carrier.

B. The request for the medical examination shall fix a time and place having regard to the convenience of the employee, his physical condition and ability to attend. The employee may have a physician present at the examination if procured and paid for by himself.

C. If the employee refuses to submit to the medical examination or obstructs the examination, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period.

D. A physician who makes or is present at the medical examination provided by this section may be required to testify as to the result thereof.

E. Upon appropriate application and hearing, the commission may reduce or suspend the compensation of an employee who persists in unsanitary or injurious practices tending to imperil or retard his recovery, or who refuses to submit to medical or surgical treatment reasonably necessary to promote his recovery.

2. § 23–1071. Notice by disabled employee of absence from locality or state; failure to give notice; change of doctor

A. No employee may leave the state of Arizona for a period exceeding two weeks while the necessity of having medical treatment continues, without the written approval of the commission. Any employee leaving the state of Arizona for a period exceeding two weeks without such approval will forfeit his right to

The order of the Industrial Commission included the following proviso:

IT IS FURTHER ORDERED that said applicant shall return at her expense if so directed by the defendant insurance carrier or the Industrial Commission of Arizona.

In June of 1981 the carrier scheduled a medical examination of the employee with Thomas H. Taber, M.D., for July 7, 1981, in Phoenix, Arizona.

In communications between counsel it was requested that a physician be appointed for the examination in Alabama rather than Phoenix, due to the expense and the employee's health.

The carrier would not accommodate the employee and she traveled to Phoenix at her own expense for the appointment with Dr. Taber on July 7, 1981.

The contents of Dr. Taber's report are not disputed by the parties. It included the following:

It is my opinion that this patient sustained a lumbosacral contusion and a strain on 7–31–79. There are no definite, specific, orthopaedic findings today. The patient's picture is that of a patient with underlying degenerative joint disease with significant functional overlay and over reactivity unresponsive to any treatment and progressively getting worse. It is my opinion that there is no evidence of orthopaedic disease related to the episode of 7–31–79. The patient does have some degenerative joint disease of her spine which is organic. *In addition she has significant functional overlay but probably not a specific psychiatric problem. These functional components should be evaluated appropriately.* (Emphasis added)

Based on Dr. Taber's report, and after petitioner had returned to Alabama, the carrier scheduled another medical examination by Howard S. Gray, M.D., a psychia-

trist. This examination was set in Phoenix, Arizona, and was scheduled for September 18, 1981.

Counsel for petitioner requested that a psychiatrist be appointed in Alabama for the examination as petitioner was too ill to travel and could not afford the expense of another trip so soon after the first examination.

There is no indication that the carrier made any attempt to assess the feasibility or necessity of appointing a psychiatric physician in Alabama to conduct the examination.

Counsel for petitioner filed a motion for a protective order against the notice of further medical examination. Apparently because the matter was not at that time before the hearing division of the Industrial Commission, the motion was handled administratively. The motion was denied by the chief counsel for the Industrial Commission, who set the date for the examination for September 29, 1981. No one has argued the effect or validity of this procedure, therefore we will not reach the question.

In regard to the carrier's argument that the denial of the motion for protective order became final, we note that a recent decision of the Arizona Supreme Court has determined that an order denying a motion for protective order is interlocutory. *Miceli v. Industrial Commission,* 135 Ariz. 71, 659 P.2d 30 (1983). Such an order can be challenged pursuant to A.R.S. § 23–948 by a special action governed by Rule 1(b), Rules of Procedure for Special Actions, 17A A.R.S.; *Miceli, supra.*

■ It is appropriate for this court to consider *sua sponte,* the scope of its Rule 10, Rules of Procedure for Special Actions, jurisdiction in this case. *Koval v. Industrial Commission,* 23 Ariz.App. 277, 532 P.2d 549 (1975). We find it was not necessary for petitioner to bring a special action pursuant

compensation during such time, as well as his right to reimbursement for his medical expenses, and any aggravation of his disability, by reason of the violation of this section, will not be compensated.

B. No employee may change doctors without the written authorization of the insurance carrier, the commission or the attending physician.

to A.R.S. § 23–948 against the interlocutory Commission order denying her motion for protective order to preserve the issue for review. On Special Action—Industrial Commission review, this court's jurisdiction is limited to, *but may also include,* all matters which the administrative law judge could consider in his review of his own decision. *See Stephens v. Industrial Commission,* 114 Ariz. 92, 95, 559 P.2d 212, 215 (App.1977).

■ By requesting a hearing against a notice of suspension of benefits issued by the carrier, the petitioner in this case challenged the Industrial Commission's authority to require her attendance at a medical examination scheduled far from home. The interlocutory order of the Commission denying her motion for protective order did not preclude the administrative law judge from considering the validity of the carrier's notice of suspension of benefits. Since the petitioner raised the argument again in her request for review, the question of the validity of the suspension is also properly before this court. *Stephens, supra.*

Petitioner did not appear in Phoenix for the psychiatric examination and on October 29, 1981, the carrier issued a notice of suspension of benefits alleging that petitioner had refused to attend or had obstructed a medical examination.

Petitioner, through counsel, requested a hearing. The matter was handled without a hearing through a pre-hearing conference and the submission of the case to the administrative law judge on the basis of stipulated facts, the Industrial Commission claims file, and memoranda of counsel.

The award, issued May 7, 1982, upheld the suspension on two grounds: first, that the conditions of the order granting permission to leave the state required her to return at any request of the carrier at her own expense, regardless of A.R.S. § 23–1026; secondly, that the request of the carrier for a psychiatric examination was reasonable because the carrier could have, on the basis of Dr. Taber's report, closed petitioner's claim entirely.

On special action review, petitioner asserts that, even in light of the conditional order granting permission to leave the state, A.R.S. § 23–1026 must be applied in determining whether a failure to attend a medical examination scheduled away from the injured worker's residence is a willful refusal. Additionally, petitioner argues that the refusal of the carrier to negotiate at all concerning the place of examination, together with the setting of a second examination close in time to the first, was unreasonable on the part of the carrier.

The carrier argues that once the petitioner failed to appear at a duly noticed medical examination, there were *prima facie* grounds upon which to issue a suspension of benefits. *Edmunds v. Industrial Commission,* 126 Ariz. 486, 616 P.2d 946 (App.1980). However, as we also stated in *Edmunds,* upon filing a request for hearing, the claimant is entitled to show why the failure to attend is not grounds for suspension. As will be discussed, the fact that a medical examination has been scheduled away from the injured worker's place of residence requires the carrier, after protest by the claimant on those grounds, to show reasonable cause why the suspension should be sustained in light of A.R.S. § 23–1026.

In a case which we find instructive to the issues in this review, the Arizona Supreme Court has recently considered the validity of a suspension of benefits when a claimant has reasonably objected to the setting of a medical examination away from home. The decision, *Miceli v. Industrial Commission, supra,* did not involve a claimant who resided out-of-state; however, the reasoning is persuasive as to the issue before this court.

Interpreting A.R.S. § 23–1026, the court stated:

Obviously, the statute limits the Commission by depriving it of unrestrained discretion with regard to the place of examination. It must be one which is reasonably convenient to the employee. Our courts have held that a reasonable showing of cause must be made before an order could be entered forcing an injured

worker who had left the state to return to Arizona for examination. *Meva Corporation v. Industrial Commission,* 15 Ariz.App. 20, 25, 485 P.2d 844, 849 (1971). While the requirement of good cause in *Meva* went to the issue of modifying benefits, rather than the place of examination, the court in making its ruling recognized that A.R.S. § 23–1026 *"does not grant an unfettered right on the part of the carrier to demand that the Industrial Commission order an injured worker to appear in Arizona for follow-up physical examinations." Id.* We believe that the same principle is applicable to requiring an injured worker to leave his or her residence and travel to a different locality for medical examination; *there must be a reasonable showing of cause.* (Emphasis added)

■ Where permission to reside in another state has been granted under A.R.S. § 23–1071, the carrier, upon scheduling a medical examination far from the injured worker's home, must still show that its action is reasonable pursuant to A.R.S. § 23–1026, if the claimant objects to the examination on the grounds provided in that statute.

*Waxler v. Industrial Commission,* 116 Ariz. 213, 568 P.2d 1111 (App.1977), cited by the carrier, has no application to this case because the claimant in *Waxler* left the state without the permission of the Industrial Commission while she required medical treatment. *See* A.R.S. § 23–1071(A).

■ By this opinion we do not say that the Industrial Commission has no right to order a claimant to appear in Arizona for a follow-up physical examination. We merely hold that the award in this case is in error for failing to apply the correct legal standard when it determined that A.R.S. § 23–1026 did not apply to the carrier's action in suspending benefits. The facts show no attempt on the part of the carrier to show reasonable cause why this claimant should be required to travel far from her home a second time for a psychiatric examination. There are no reasons set forth anywhere in the record why the psychiatric

examination must occur in Arizona rather than Alabama. Rather, the administrative law judge relied on the condition in the order granting permission to leave the state that required the claimant to return at any time at her own expense. As we have already discussed, that condition did not obviate the application of A.R.S. § 23–1026, and the award is in error.

■ The second basis for the award also requires comment. The mere fact that the carrier might have been able to close the case on the basis of Dr. Taber's report without scheduling an additional psychiatric examination does not bear upon the reasonableness of the examination or the failure to attend under A.R.S. § 23–1026. Entirely different legal and factual considerations underlie the closing of a claim as opposed to a suspension of benefits. The carrier may not, through an arbitrary use of suspension, achieve an effective closure of the claim. Whenever possible, cases should not be resolved through procedural vehicles, but by proceedings on the merits. *Cook v. Industrial Commission,* 133 Ariz. 310, 651 P.2d 365 (1982). Therefore, we find that the portion of the award upholding the carrier's action because Dr. Taber's report would have supported closing the claim is also in error. The claimant has the right to contest closure of her claim in other proceedings.

For the reasons stated above, the award is set aside.

BROOKS, J., concurs.

JACOBSON, Presiding Judge, specially concurring:

While I agree that the award in this case must be set aside for the failure of the administrative law judge to apply the proper legal test for suspension of benefits, I do not agree with the inference that the carrier has the burden of showing why A.R.S. § 23–1026 is not applicable.

My reading of the majority opinion seems to give the absolute right to a permissive out-of-state claimant to have medical examinations out of state and the burden is on

the carrier to show why such a right should not be exercised. To put this matter in proper perspective, what basically the court has before it, is a claimant who is injured in this state, is still in a temporary status (i.e., continuing medical treatment is necessary), is allowed to go out of state under an order of the Commission that she "shall return at her own expense if so directed by the defendant insurance carrier", and who does not attend a medical examination in this state, for which the carrier seeks suspension of benefits.

Out of this factual picture, the court is faced with the determination of the various legal rights of the parties. Up front, obviously, the carrier has the right to have the claimant medically examined. A.R.S. § 23–1026. Equally as obvious, is the right of the claimant, under the same statute, to have the examination conducted at a time and place "reasonably convenient for the employee". A.R.S. § 23–1026(B). What is presented in this case is the fact that the claimant is presently residing outside the state of Arizona, pursuant to an order of the Commission. A.R.S. § 23–1071. In my opinion, the resolution of this issue requires that A.R.S. § 23–1026 (requiring medical examinations at a place reasonably convenient to the employee) and A.R.S. § 23–1071 (requiring permission of the Commission to leave the state while the necessity of medical treatment continues), be reconciled insofar as practical to do so.

Normally, the injured worker, during the period of temporary disability is actively receiving medical treatment from local doctors. It is in the carrier's interest to see that such treatment is effectively administered so that the period of temporary disability (with its concomitant higher rate of compensation) not be unduly extended or that permanent disability not be enhanced for lack of proper treatment. The claimant who leaves the state and thus the supervision of the treatment by the carrier, thwarts that interest. A.R.S. § 23–1071 recognizes this legitimate interest by requiring written permission of the Commission to leave the state. *Waxler v. Industri-*

*al Commission,* 116 Ariz. 213, 568 P.2d 1111 (App.1977).

Considering the interest sought to be protected, it appears to me that in a proper case, the Commission might well condition the permission of the claimant in leaving the state, by requiring the claimant to return to the state at his or her own expense, as was done in this case. After all, it is the claimant who is seeking a resident status which has the potential for disrupting the orderly administration of the claim, and I see no reason why the Commission cannot place a reasonable burden on the claimant who seeks such a benefit.

On the other hand, the claimant who has properly applied for and received permission to leave the state should not be required, willy nilly, to return to the state at the beck and call of the carrier if legitimate reasons exist for not so returning. This principle is embodied in A.R.S. § 23–1026. I would balance the rights of both parties by a shifting of the burden of proof.

As the majority correctly points out, the carrier, when attempting to suspend benefits for failure to attend medical examinations, has the burden of persuasion on this issue. However, that *prima facie* burden can be satisfied by showing that the claimant failed to appear at a duly noticed medical examination. *Edmunds v. Industrial Commission,* 126 Ariz. 486, 616 P.2d 946 (App.1980). While the in-state claimant is entitled to the full protection of A.R.S. § 23–1026, and the carrier bears the burden of showing good cause for examining a claimant at some locale other than the claimant's place of residence, *Miceli v. Industrial Commission,* 135 Ariz. 71, 659 P.2d 30 (1983), in my opinion, since the permissive out-of-state claimant receives the benefit of moving out of state, the burden of going forward with the proof as to why he or she should not return to Arizona shifts to the claimant. This position appears to be contrary to the majority opinion. I do agree with the majority, however, that the administrative law judge erred in solely relying upon the conditional order of the Commission in upholding the suspension of

**130**

the benefits in this case. Rather, the administrative law judge must determine from all the facts whether the claimant's refusal to return to Arizona for the psychiatric examination was reasonable. I further agree with the majority that the possibility of the carrier completely terminating temporary benefits based upon Dr. Taber's report is not a legally sufficient ground for suspending benefits for failure to attend the medical examination.

Finally, I do not agree that the dicta quoted by the majority from *Miceli v. Industrial Commission, supra,* is binding in this matter. *Miceli,* refers to *Meva Corporation v. Industrial Commission,* 15 Ariz. App. 20, 485 P.2d 844 (1971), for the proposition that a reasonable showing of cause must be made before an order could be entered forcing an injured worker who has left the state to return to Arizona for examination. *Meva Corp.* involved a claimant who was on permanent disability status and thus did not need the permission of the Commission to leave the state. The carrier in that case was attempting to have the claimant returned to Arizona for an unauthorized purpose, vocational rehabilitation. It is in this context that the *Meva Corp.* court referred to a reasonable showing of cause, that is, a legally permissible purpose. Thus, not only is the *Miceli* holding in regard to out of state claimants dicta, the case relied upon does not support the type of reasonable showing of cause referred to in *Miceli.* For these reasons, I do not find the dicta quoted from *Miceli* to be controlling.

I agree the award must be set aside.