Mary I. THOENI, Appellant,

v.

CONSUMER ELECTRONIC SERVICES, et al., Appellees.

No. S–11897.

Supreme Court of Alaska.

Jan. 12, 2007.

Rehearing Denied March 1, 2007.

Mary I. Thoeni, pro se, Wasilla.

Timothy A. McKeever, Holmes Weddle & Barcott, P.C., Anchorage, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Mary Thoeni was injured in a fall while at work in 2000. She continues to be paid benefits for the resulting knee injury, but the Alaska Workers' Compensation Board denied compensation for other claimed injuries and upheld several controversies of her benefits. Thoeni appeals these determinations. Because all but two are supported by substantial evidence, we affirm the board as to those decisions. As to the remaining issues—whether Thoeni should forfeit benefits as a result of her refusal to attend a medical examination and whether her knee was medically stable between November 2000 and January 2001—we hold that the board erred and therefore reverse.

## II. FACTS AND PROCEEDINGS

### A. Facts

Mary Thoeni worked as an electric technician for Consumer Electronic Services (CES) in Anchorage. In March 2000 she was "carrying a cable television converter box ... when she tripped and landed on her outstretched hands and knees." The injury was reported to the Alaska Workers' Compensation Board. Thoeni was treated initially by Drs. Robert Myers and David McGuire in Anchorage. CES accepted Thoeni's workers' compensation claim; its workers' compensation carrier, Alaska National Insurance Company, began paying temporary total disability (TTD) benefits the day after Thoeni's fall.

Thoeni sought treatment from Dr. Robert Hall in Anchorage in May; Hall ordered an MRI and physical therapy. Thoeni reported problems with the physical therapy. Stating, "I don't see anything else that we could offer this patient," Dr. Hall referred Thoeni to Dr. Shawn Hadley, who in turn referred Thoeni to Dr. Bret Mason, an orthopedist. Mason

performed arthroscopic surgery in August 2000 and released Thoeni to return to work as of October 2000.

Thoeni returned to work but began experiencing chest pain. She saw Dr. Dwayne Trujillo in Anchorage regarding the chest pain. Dr. Trujillo diagnosed costochondritis and noted that the symptom pattern "suggests an overuse or repetitive stress-type injury etiology." [1] Even though Dr. Mason indicated that the knee injury and chest pain were unrelated, Thoeni filed a workers' compensation claim on the costochondritis as a continuing manifestation of her knee injury, and CES accepted the claim and paid TTD benefits.

CES asked Thoeni to attend an employer's independent medical examination (EIME) [2] in Sandy, Utah, on January 25, 2001. Thoeni refused to travel from Miami—where she had moved in December 2000—to Utah for the examination. While in Miami Thoeni saw Dr. Jose Jaen, who recommended additional surgery on her knee. Thoeni moved to Alabama shortly thereafter and on February 21, 2001 attended an EIME in Montgomery conducted by Dr. Roland Rivard. Thoeni had another knee surgery in April 2001, performed by Dr. James Armstrong in Montgomery. When Dr. Rivard saw Thoeni in September 2001 he stated that Thoeni had a partial permanent impairment rating of two percent for her left knee. He also stated, "It does not appear to me that the chest pain ... was ... relat[ed to] the injury to her knees."

In September 2001 Thoeni filed workers' compensation claims for depression and insomnia. The claims alleged that these illnesses were a continuing manifestation of her knee injury. Thoeni subsequently attended independent medical examinations by Drs. Robert Barth and Judith Weingarten. Barth indicated that "a strong suspicion of malingering should be adopted," and reported that "the results of this consultation process provided significant evidence that any mental illness is not attributable to her claim of work-related injury." Barth also said "it

---

**1.** Costochondritis is a "[p]ainful inflammation (swelling) of the cartilage of the ribs."

**2.** See AS 23.30.095(e).

can be stated definitively that Ms. Thoeni's presentation would not allow anyone to credibly conclude that her presentation of mental illness is attributable to the March 27, 2000 work injury." Weingarten was unsure whether to diagnose depression, but stated, "In my opinion, to a reasonable degree of medical certainty, none of these psychiatric diagnoses would be related to a work injury or injuries at Consumer Electronic Services." CES then controverted Thoeni's claim for benefits on the mental illnesses.

Throughout the claims process CES controverted Thoeni's benefits multiple times, chiefly for failure to sign medical releases. CES also controverted her benefits for a period due to her refusal to attend the January 2001 examination in Utah. After a second independent medical examination[3] in April 2002 indicated that Thoeni could return to work after some improvement, CES controverted her knee[4] and chest benefits. Thoeni now resides in Wasilla.

### B. Proceedings

#### 1. The Alaska Workers' Compensation Board hearing

In September 2002 the Alaska Workers' Compensation Board held a hearing on Thoeni's claims. As to Thoeni's knee injury, the board found that Thoeni had established the presumption of compensability,[5] that CES had rebutted the presumption, and that Thoeni had "proven by a preponderance of the evidence that she is entitled to continued medical benefits for her knee." The board held that Thoeni was entitled to select a new doctor, and that she was entitled to treatment with a knee brace so long as the treatment was obtained in Alaska. The board found that Thoeni's knee was no longer medically stable once Dr. Jaen recommended surgery in January 2001, and that she was therefore entitled to TTD benefits from that date until medical stability was reached.

The board found that Thoeni had initially reached medical stability in October 2000 and thus was not entitled to benefits between that time and Dr. Jaen's recommendation.

As to Thoeni's costochondritis, the board found that she had met the presumption of compensability but that CES had rebutted the presumption and that Thoeni had not proven her claim for additional medical benefits by a preponderance of the evidence. The board found that Thoeni's costochondritis was work-related but that "the preponderance of the evidence shows that [Thoeni's] costochondritis has in fact resolved." Accordingly, the board denied her claim for additional benefits for costochondritis.

The board found that Thoeni also failed to prove by a preponderance of the evidence her entitlement to medical benefits for her depression and insomnia. The board found that these illnesses were not work related and therefore denied Thoeni's claim. The board stated, "We find the reports of Dr. Barth and Weingarten to be more convincing and credible." It considered reports by two doctors, Dr. William Freeman and Dr. Daryl Hamblin, who had briefly seen Thoeni in July 2001, but gave them less weight.

The board denied Thoeni's claim for transportation costs, finding that Thoeni had produced no evidence of unpaid expenses and therefore had failed to raise the presumption of compensability. The board denied Thoeni's claim for penalties under AS 23.30.155, finding CES's controversions to be "based on valid legal or medical evidence." The board awarded interest under 8 AAC 45.142(a) and 8 AAC 45.142(b)(3) on any previously unpaid TTD benefits. The board denied Thoeni's claims that CES had frivolously or unfairly controverted her benefits. The board found that CES had controverted on the bases of Thoeni's failure to sign releases, reports of her medical stability, and her refusal to attend the EIME in Utah. The board stated,

---

3. AS 23.30.095(k) provides that "[i]n the event of a medical dispute ... between the employee's attending physician and the employer's independent medical evaluation, the board may require that a second independent medical evaluation be conducted by a physician ... selected by the board."

4. Despite this controversion, CES has continued to pay benefits for the knee injury. According to CES, it paid for Thoeni to travel to Alabama recently to obtain a knee brace.

5. See AS 23.30.120(a)(1).

"We have examined the controversion notices filed by the employer, and find a rational basis exists for each of them in this case." The board stated it was unable to determine whether Thoeni was entitled to *pro se* legal costs and ordered her to submit an itemization.

#### 2. The board's order on reconsideration

CES filed a petition for reconsideration in November 2002. The board granted the petition in part. It held that Thoeni had forfeited some benefits by refusing to sign valid medical releases. It also held that Thoeni's failure to attend the Utah medical examination was unexcused and therefore forfeited her benefits from January 25, 2001, the date of that examination, until she saw Dr. Rivard in Alabama on February 21, 2001. The board denied the parties' requests to reconsider its remaining findings.

#### 3. The superior court proceeding

Thoeni appealed the board's order to the superior court. Judge Morgan Christen issued her ruling on March 17, 2005. The court in large part affirmed the board's ruling on the basis that substantial evidence existed for the findings or that Thoeni had not raised issues before the board. The court reversed the board's holding on the stability date of Thoeni's knee injury, holding that there was not substantial evidence for medical stability for the period from October 9 to November 2, 2000. The court also reversed the board's finding that Thoeni had forfeited benefits by failing to sign releases, holding that the finding was not supported by substantial evidence. On reconsideration, the court clarified that its holding on the medical stability issue did not necessarily

mean that Thoeni was entitled to TTD benefits for that period. The court remanded these issues to the board. Thoeni appeals from the superior court's ruling.

### III. STANDARD OF REVIEW

 When the superior court acts as an intermediate court of appeals, we independently review the decision of the administrative agency.[6] If the parties raise a question of law that does not involve special agency expertise, we review the question under the substitution of judgment standard.[7] Under the substitution of judgment standard, we apply our independent judgment and adopt the rule of law that is most persuasive in light of precedent, reason and policy.[8] Agency determinations of fact are reviewed for substantial evidence.[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] The workers' compensation board has "exclusive authority" to decide the credibility of witnesses.[11] The board's exercise of its discretion is reviewed for abuse; an abuse of discretion occurs if we are left with a "definite and firm conviction" that the decision reviewed was a mistake.[12]

### IV. DISCUSSION

#### A. We Treat Thoeni's Appeal as a Petition for Review.

Under Alaska Appellate Rule 202 an appeal may only be taken from "a final judgment" of the court below. We held in *City and Borough of Juneau v. Thibodeau*[13] that there is no final judgment when a matter is appealed from an administrative agency to the superior court and the court remands one or more of the issues on appeal to the agency.[14] We also held, however, that in certain

---

**6.** *Circle De Lumber Co. v. Humphrey*, 130 P.3d 941, 946 (Alaska 2006); *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003).

**7.** *Circle De*, 130 P.3d at 946.

**8.** *Id.*

**9.** *Id.*

**10.** *Id.* (quoting *Robertson v. Am. Mech., Inc.*, 54 P.3d 777, 779 (Alaska 2002)).

**11.** *Cowen v. Wal–Mart*, 93 P.3d 420, 424 (Alaska 2004); *see* AS 23.30.122.

**12.** *Municipality of Anchorage v. Devon*, 124 P.3d 424, 429 (Alaska 2005).

**13.** 595 P.2d 626 (Alaska 1979).

**14.** *Id.* at 629.

circumstances we may choose to treat an improperly brought appeal as a petition for review "in order to prevent hardship and injustice."[15] Moreover, we have stated that treatment as a petition for review is warranted if "present review will materially advance the ultimate termination of the litigation."[16] Similarly, Alaska Appellate Rule 402(b)(1) provides that we may grant review if to do otherwise would "result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors."

Thoeni's appeal in the superior court resulted in the remand of two issues to the board: whether Thoeni was entitled to TTD benefits from October 2 to November 9, 2000 and whether Thoeni's alleged refusal to sign medical releases was a basis for benefit forfeiture. Since part of the case was remanded to the administrative agency, under *Thibodeau* Thoeni has improperly brought her appeal from the judgment of the superior court. The issues remanded, however, are a small and discrete part of the entire dispute, and we are persuaded that reaching the merits will materially advance the ultimate termination of the litigation. Accordingly, we see no reason to delay this case further or to require the parties to prepare the appeal a second time. We therefore treat Thoeni's appeal as a petition for review and grant the petition in order to reach the merits of the litigation.

### B. The Board's Order Forfeiting Benefits Due to Thoeni's Refusal To Attend the EIME Was an Abuse of Discretion.

 Thoeni argues that the board erred in determining, and the superior court in af-

firming, that she had no excuse for her refusal to travel from her home in Miami to attend the examination in Utah in January 2001. The examination was cancelled after her refusal. Under Alaska law, CES had a right to require the examination, and the board had the discretionary authority to order forfeiture of benefits.[17] The board found that Thoeni had recently traveled by herself when she moved from Anchorage to Miami, and held that her refusal to travel unassisted was unwarranted. The board stated that "certainly the employee could have sought the assistance of the airlines, cab drivers, and hotel personnel in handling her luggage at the various locations." The board found that "the employer could have found a physician in Florida to conduct the EIME" but that the employer's statutory ability to select its physician for the examination meant that the selection did not have to be "based on what is the most convenient location for the employee." Thoeni distinguishes the two trips on the basis that the trip to Utah would "require an overnight stay in a hotel," whereas she was met by and lodged with a relative upon her arrival in Miami. Thus, while Thoeni made the trip to Miami alone, she was not alone once she arrived in Miami.

The board erred when it found Thoeni's refusal to attend the Utah examination to be unexcused. The board acknowledged that a physician could have been found in Florida. Even though, as the board states, the employer does not have to select the examining physician to be the "most convenient" for the employee, this does not mean that the employee's convenience should be completely

---

15. *Id.* at 631.

16. *Hagberg v. Alaska Nat'l Bank,* 585 P.2d 559, 560 (Alaska 1978); *see also Municipality of Anchorage v. Anderson,* 37 P.3d 420, 421 (Alaska 2001) (declining to treat improperly brought worker's compensation appeal as petition for review because doing so would not "effectively dispose of the issues remaining in the underlying civil action" or "prevent unnecessary delay, expense, and hardship to the parties").

17. AS 23.30.095(e) provides, in relevant part:
The employee shall, after an injury, at reasonable times during the continuance of the disability, if requested by the employer or when ordered by the board, submit to an examination by a physician or surgeon of the employer's choice authorized to practice medicine under the laws of the jurisdiction in which the examination occurs, furnished and paid for by the employer. . . . If an employee refuses to submit to an examination provided for in this section, the employee's rights to compensation shall be suspended until the obstruction or refusal ceases, and the employee's compensation during the period of suspension may, in the discretion of the board or the court determining an action brought for the recovery of damages under this chapter, be forfeited.

discounted. The statute provides that the employer may request examinations "at reasonable times."[18] Although the statute does not make any comment on where the examination takes place, its requirement of a "reasonable time" indicates that the legislature intended some consideration of the employee's ease in attending the examination. Furthermore, the board's regulations on selection of physicians for a second independent medical evaluation—when the board, rather than the employer, makes the selection—explicitly direct that "the proximity of the physician to the employee's geographic location" be taken into account.[19] Other jurisdictions have held that even intra-state travel can be unreasonable depending on the circumstances of the case.[20] Requiring Thoeni to travel 2500 miles from her home was manifestly unreasonable. The board's decision that Thoeni's refusal was unreasonable is not supported by substantial evidence. Accordingly, the board abused its statutory discretion when it determined that Thoeni should forfeit her benefits for the period during which she refused to attend an examination. We reverse the board's determination that Thoeni should forfeit benefits for the period from January 25 to February 21, 2001.

**C. Substantial Evidence Does Not Support the Finding that Thoeni's Knee Was Medically Stable Between November 2000 and January 2001.**

Thoeni challenges the finding that her knee was medically stable from November 2, 2000 to January 25, 2001.[21] It is the employer's burden to prove noncompensability by substantial evidence.[22] Here, the employer sought to show that Thoeni had reached medical stability and hence was not entitled to further benefits.[23] Thoeni argues that she had not reached medical stability by November 2 and alleges further that her knee was "re-injured" in November 2000 and again in early January 2001. Accordingly, she argues, she should not have been declared medically stable because she "not only failed to improve but suffer[ed] deterioration and additional injury." On appeal, CES does not advance any argument in support of the finding of medical stability from November 2 to January 25. It is to this period that we turn our attention now.

The finding of medical stability was based primarily on Dr. Mason's report of November 2, 2000, which contained the prediction that he did not "expect any major changes in the next 45 days . . . ." The finding of medical stability was also based on Dr. Hadley's report of early December in which she indicated that Thoeni's knee was capable of im-

18. *Id.*

19. 8 AAC 45.092(e)(6).

20. *See Miceli v. Indus. Comm'n of Ariz.*, 135 Ariz. 71, 659 P.2d 30, 34 (Ariz.1983) (under Arizona statute requiring examination to be "reasonably convenient" for employee, requiring travel from Tucson to Phoenix "arbitrar[y] and unjust[]"); *Israel v. Indus. Comm'n of Ariz.*, 137 Ariz. 124, 669 P.2d 102, 106 (App.1983) (when employee had moved to Alabama from Arizona, missing exam in Phoenix not basis for suspension of benefits absent showing of "reasonable cause" for scheduling exam in Phoenix); *Hansen v. Workers' Comp.App. Bd.*, 211 Cal.App.3d 717, 259 Cal.Rptr. 506, 509 (1989) (requiring heart patient to travel 185 miles "unwarranted and unreasonable"); *but see Romo v. Dep't of Labor & Indus.*, 92 Wash.App. 348, 962 P.2d 844, 849–50 (1998) (where previous examiner reported employee able to attend doctors' appointments, refusal to leave home for examination not reasonable).

21. The board originally found that Thoeni's knee was medically stable between October 9, 2000

and January 25, 2001. Citing to Dr. Mason's chart notes of Thoeni's November 2 visit—the visit which precipitated a release to work as of November 28—and Dr. Hadley's statement on December 7 that Thoeni "appears to be medically stable at this time," the superior court narrowed the board's finding, holding that there was not substantial evidence for medical stability from October 9 to November 2.

22. *See Wollaston v. Schroeder Cutting, Inc.*, 42 P.3d 1065, 1067 (Alaska 2002); *Tolbert v. Alascom*, 973 P.2d 603, 611 (Alaska 1999).

23. Alaska law provides that "[t]emporary total disability benefits may not be paid for any period of disability occurring after the date of medical stability." AS 23.30.185. Medical stability is "the date after which further objectively measurable improvement from the effects of the compensable injury is not reasonably expected to result from additional medical care or treatment." AS 23.30.395(21).

provement with a diligent exercise regime.[24] Dr. Hadley's prediction that exercise would result in improvement, like Dr. Mason's prediction that the knee would not deteriorate, proved incorrect. By the time the board determined medical stability, it knew that Dr. Mason's prediction of no significant changes within forty-five days and Dr. Hadley's prediction that Thoeni would be medically stable with a diligent exercise program were incorrect. It also knew that another knee surgery to improve the knee was recommended on January 25, 2001. It knew this because of Dr. Jaen's report.

Dr. Jaen's letter of December 14 reports that "Mrs. Thoeni reveals that she has continued to present medial knee pain in spite of surgery and these symptoms have in fact increased in intensity in recent weeks." Dr. Jaen stated that he would "attempt further conservative treatment" but that "if intense symptoms persist then arthroscopic surgery will be indicated." Indeed, another surgery to improve the knee was recommended on January 25, 2001 and performed in April 2001. Thus, the board knew that Dr. Mason's and Dr. Hadley's predictions proved incorrect.

In a similar case, we reversed a finding of medical stability where a prediction of medical stability turned out to be incorrect. In *Wollaston v. Schroeder Cutting Inc.*,[25] the board's conclusions were based on predictive testimony about a worker's recovery that proved to be incorrect.[26] Similarly, in the instant case the predictions of Dr. Mason and Dr. Hadley—which proved to be incorrect—

were not substantial evidence upon which the board could reasonably conclude that Thoeni had achieved medical stability. Accordingly, we reverse the determination that Thoeni had reached medical stability from November 2, 2000 to January 25, 2001.

**D. The Board's Finding that Thoeni Had Failed To Prove the Need for Further Treatment of her Costochondritis Was Supported by Substantial Evidence.**

 The board found that Thoeni had failed to prove by a preponderance of the evidence that she was entitled to continuing medical benefits for costochondritis.[27] From the record it appears that the board based its decision on Dr. Rivard's report of September 19, 2001 (stating that the condition was not related to her knee injury), Dr. Pitzer's report of April 2002 (stating that costochondritis was not a factor "in her current pain complex"), and Thoeni's testimony that the condition had resolved by February 2001. The board noted that Dr. Jaen's report recommended further treatment but that it did not state that Thoeni was unable to work. The board is entitled to weigh contradictory evidence and to make a determination.[28] The reports of two doctors plus the claimant's own testimony clearly constitute substantial evidence.

 Thoeni argues that the reports of Drs. Mason and Rivard—which the board held rebutted the presumption of compensability—were inadmissible. Since this argument was not raised before the board or the

24. After Dr. Hadley noted her suspicion that Thoeni still suffered from "functional weakness of her left quadriceps mechanism," Dr. Hadley wrote: "The treatment for this would be continued diligent work on lower extremity strengthening.... She appears to be medically stable at this time, however, other than the suggestion for continued diligent work on a knee strengthening program." Thus, Dr. Hadley recommended a course of exercise in an attempt to effect an improvement in the knee's function, a position that is not consistent with a determination of medical stability.

25. 42 P.3d 1065 (Alaska 2002).

26. *Id.* at 1066.

27. Under AS 23.30.120, the board must "presum[e], in the absence of substantial evidence to the contrary, that the claim comes within the provisions of" the worker's compensation act. "Once the presumption arises, an employer can overcome it by presenting substantial evidence that either (1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability." *Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1188 (Alaska 1993). Here, the board concluded that the condition was work-related but had resolved.

28. *Dwight v. Humana Hosp. Alaska*, 876 P.2d 1114, 1118–19 & n. 7 (Alaska 1994).

superior court, it is waived.[29] Moreover, we note that the board may use relaxed evidentiary standards in its hearings,[30] that the board "favors the production of medical evidence in the form of written reports," [31] and that the reports would likely be admissible under Evidence Rules 803(a)(4)—the hearsay exception for statements for purposes of medical diagnosis or treatment—or (a)(6)—the hearsay exception for business records. Thoeni also argues that the report for the September 2001 exam provided by Dr. Rivard "is obviously for someone other than the employee," but she did not raise this challenge below and our review does not indicate plain error on the part of the superior court.

■ We generally hold *pro se* litigants such as Thoeni to a less demanding standard than counseled litigants.[32] But this relaxed standard has limits; for example, "even when a pro se litigant is involved, an argument is considered waived when the party cites no authority and fails to provide a legal theory for his or her argument." [33] Similarly, a *pro se* litigant who fails to raise an issue below should not be able to raise the issue on appeal absent plain error.[34] We "will consider arguments not raised explicitly in the 'trial court' (here the ... agency hearing) if the issue is (1) not dependent on any new or controverted facts; (2) closely related to the appellant's trial court arguments; and (3) could have been gleaned from the plead-

ings." [35] Thoeni's challenges to the Rivard and Mason reports, to the qualifications of Drs. Barth and Weingarten, and her arguments that appellees interfered with the selection of or improperly influenced physicians, do not meet the second and third prongs of this test.

### E. The Board's Finding that Thoeni's Depression and Insomnia Were Not Work–Related Is Supported by Substantial Evidence.

■ The board based its finding that Thoeni's depression and insomnia were not work-related on the reports of Drs. Barth and Weingarten.[36] These reports provide substantial evidence for the board's conclusion. Dr. Barth indicated that "any mental illness is not attributable to her claim of work-related injury." Dr. Weingarten stated, "In my opinion, to a reasonable degree of medical certainty, none of these psychiatric diagnoses would be related to a work injury or injuries at Consumer Electronic Services." Both the Weingarten and Barth reports are thorough examinations of Thoeni's mental health. The board discounted the reports from Drs. Hamblin and Freeman; these reports are briefer and are offered by nonspecialists. The board is entitled to so weigh the evidence; we do not reweigh the evidence but only examine the record to deter-

**29.** *Wagner v. Stuckagain Heights*, 926 P.2d 456, 459 (Alaska 1996); *Ratliff v. Alaska Workers' Comp. Bd.*, 721 P.2d 1138, 1142 (Alaska 1986).

**30.** AS 23.30.135(a) provides in relevant part:
In ... conducting a hearing the board is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure, except as covered by this chapter.

**31.** 8 AAC 45.120(k).

**32.** *See Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987).

**33.** *Peterson v. Ek*, 93 P.3d 458, 464 n. 9 (Alaska 2004) (internal quotation marks and citation omitted). *See also Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989) (declining to extend *Breck* to require judges to warn *pro se* litigants on aspects of procedure when the litigant has failed to file even a defective pleading).

**34.** *State Farm Auto. Ins. Co. v. Raymer*, 977 P.2d 706, 711 (Alaska 1999) ("We will not consider new arguments not raised in the trial court, unless the issues establish plain error....").

**35.** *McConnell v. State, Dep't of Health & Soc. Servs., Div. of Medical Assistance*, 991 P.2d 178, 183 (Alaska 1999).

**36.** Although AS 23.30.120(c) provides that "[t]he presumption of compensability ... does not apply to a mental injury resulting from work-related stress," the board properly applied the presumption here because Thoeni's claim involves mental injury resulting from work-related physical injury rather than mental injury resulting from work-related stress. *Cf. Williams v. Abood*, 53 P.3d 134, 137 (Alaska 2002) (board attached presumption where claimant suffered from depression after work-related physical injury).

mine whether substantial evidence existed.[37] We have stated that "medical testimony cannot constitute substantial evidence if it simply points to other possible causes of an employee's injury or disability, without ruling out work-related causes."[38] The Weingarten and Barth reports both expressly rule out a work-related genesis for Thoeni's mental injury.

Thoeni challenges Dr. Barth's qualifications, alleging that he "was not licensed to practice medicine" and that his qualifications were misrepresented to her. Thoeni did not raise this challenge before the board and the record offers no evidence of plain error. Thoeni's letter of March 3, 2002 refers to "Robert Barth, Ph.D." Any inference Thoeni drew that Dr. Barth was an M.D. seems to be unsupported.

 Alaska Statute 23.30.095(e) provides that "the employee shall ... submit to an examination by a *physician or surgeon* ... authorized to practice medicine under the laws of the jurisdiction in which the examination occurs." (emphasis added). Thoeni argues that the plain language of this section indicates that only an M.D. may conduct an EIME. Plain language is only the starting point of the statutory inquiry, however. We interpret Alaska statutes "according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[39] We have held that "unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage."[40]

Alaska Statute 23.30.395(31) states that " 'physician' includes doctors of medicine, surgeons, chiropractors, osteopaths, dentists, and optometrists." Because the legislature chose to use the word "includes" rather than more exclusive terms, we interpret the definition as a non-exclusive list.[41] Accordingly, the term "physician" should be read to include psychologists such as Dr. Barth. This interpretation is consistent with the legislature's intent that "AS 23.30 be interpreted so as to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost."[42] Mental health specialists such as psychologists are in the best position to ensure effective treatment of mental injuries such as those suffered by Thoeni. Her claim involves a mental injury, so it is reasonable that a doctor skilled in healing mental illness—whether a Ph.D., Psy.D. or M.D.— would be qualified to conduct the inquiry into her mental health. We have consistently credited the testimony of psychologists in worker's compensation cases and are of the firm belief that continuing to do so is the proper course.[43]

Thoeni also argues that Dr. Barth "cooperated with Insurer and its attorney to fraudulently conceal, hide and misrepresent alleged diagnostic testing documents." The record

**37.** *Childs v. Copper Valley Elec. Ass'n,* 860 P.2d 1184, 1189 (Alaska 1993).

**38.** *Id.*

**39.** *Native Village of Elim v. State,* 990 P.2d 1, 5 (Alaska 1999).

**40.** *Gov't Employees Ins. Co. v. Graham–Gonzalez,* 107 P.3d 279, 284 (Alaska 2005) (quoting *Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 787–88 (Alaska 1996)).

**41.** *See* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47:23 at 316 (6th ed. 2000) ("When 'include' is utilized, it is generally improper to conclude that entities not specifically enumerated are excluded."). *Compare Schwab v. Ariyoshi,* 58 Haw. 25, 564 P.2d 135, 141 (1977) ("The term 'includes' is ordinarily a term of enlargement, not of limitation; a statutory defini-

tion of a thing as 'including' certain things does not necessarily impose a meaning limited to the inclusion.") *with Ranney v. Whitewater Eng'g,* 122 P.3d 214, 218–19 (Alaska 2005) (applying the maxim *expressio unius est exclusio alterius*— where certain things are designated in a statute, all omissions should be understood as exclusions—when statute began list with "payable in the following amounts to or for the benefit of following persons"). *See also State, Dep't of Revenue v. Deleon,* 103 P.3d 897, 900 (Alaska 2004) (*expressio unius* not applicable if "contrary to the purpose of the statute").

**42.** Ch. 101, § 1, SLA 2000.

**43.** *See, e.g., Norcon, Inc. v. Alaska Workers' Comp. Bd.,* 880 P.2d 1051, 1055–56 (Alaska 1994); *Olsen Logging Co. v. Lawson,* 856 P.2d 1155, 1156 (Alaska 1993); *Fox v. Alascom, Inc.,* 718 P.2d 977 (Alaska 1986).

indicates no basis for this claim. Indeed, Barth's refusal to turn over testing documents and thereby violate copyright law seems quite proper. Thoeni's challenge to Dr. Weingarten's report is similarly misplaced. She failed to raise the challenge before the board and the record in any case offers no support to her allegations.

### F. The Board's Conclusions that the Controversions Were Not Frivolous or Unfair Are Supported by Substantial Evidence.

Under AS 23.30.155(c), an employer who does not pay worker's compensation within the statutory deadlines is subject to significant penalties. These penalties do not apply if benefits are controverted in good faith.[44] CES controverted Thoeni's benefits claims on eight occasions. Thoeni argues that the controversions were in bad faith or "unfair" and thus invalid. The board concluded that the controversions were made in good faith, and the superior court found that this conclusion was supported by substantial evidence. CES filed the controversions on the bases that (1) the injury in question was not work-related, (2) Thoeni refused to attend a required medical examination, (3) Thoeni had been released to return to work, or (4) Thoeni refused to sign releases as ordered to by the board. These bases, if supported, all provide substantial evidence upon which the board could conclude that the controversions[45] were made in good faith. The record indicates substantial support in each instance.

### G. Thoeni's Remaining Allegations Are Not Supported by the Record.

Thoeni alleges fraud, misrepresentation, perjury, and deceit throughout the course of her briefing. She asserts that appellees "purchased and used ... false testimony,"

that "[i]nsurer's employees gave perjured testimony," and that they "misrepresented fact and law in legal arguments." No evidence appears in the record to support these allegations. The record does not indicate any impropriety sufficient to call the board proceedings into question.

Thoeni argues that the appellees interfered with her selection of doctors and improperly influenced physicians who evaluated her. It appears from the record that Thoeni initiated many of the changes in physicians. On other occasions, she was referred from one physician to another. The board noted that "every time she saw a new physician it was either approved by the employer or based on a referral from another physician." While some of the treating physicians may have received partially incomplete medical records, their reports are appropriately cautious and still provide substantial evidence for the board's decision. Dr. Weingarten's report stated, "I am not sure whether I have all the information or not," and that accordingly "it is hard to make a definite diagnosis." Still, Dr. Weingarten stated that none of the potential psychological diagnoses would be work-related. Thoeni's arguments that CES improperly influenced her physicians focuses on the fact that some of the medical experts reviewed previous reports. This is consistent with standard medical practice. No evidence of improper influence otherwise appears in the record.

Throughout Thoeni's briefing she argues that her procedural rights have been violated. As the superior court stated, "There is no indication in the lengthy record ... that her right to due process has been violated." Thoeni petitioned the board and the superior court for an award of transportation costs, but has not presented the issue on appeal.

---

**44.** In *Harp v. ARCO Alaska, Inc.*, 831 P.2d 352, 358 (Alaska 1992), we held:

A controversion notice must be filed in good faith to protect an employer from imposition of a penalty.... For a controversion notice to be filed in good faith, the employer must possess sufficient evidence in support of the controversion that, if the claimant does not introduce evidence in opposition to the controversion,

the Board would find that the claimant is not entitled to benefits.

**45.** Thoeni characterizes CES's July 25, 2001 conversion of her benefits from total temporary disability (TTD) to partial permanent impairment (PPI) as a controversion. But she failed to dispute this change before the board; thus, she waived her challenge to it.

## V. CONCLUSION

Because substantial evidence did not support the board's conclusion that Thoeni's refusal to attend the Utah EIME was unreasonable, the board abused its discretion when it ordered Thoeni's TTD benefits forfeited from January 25 to February 21, 2001. We thus REVERSE the board on this point. Because the board's reliance on predictive testimony that proved to be inaccurate cannot constitute substantial evidence, we also REVERSE on the issue of medical stability.

The board's remaining conclusions are supported by substantial evidence, and Thoeni's contentions of irregularity are not a basis for overturning the board's rulings. Accordingly we AFFIRM the decision of the board in all other respects.