*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AAA VALLEY GRAVEL, INC., | ) | |
| | ) | Supreme Court No. S-14680 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-00-00716 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALICIA TOTARO and | ) | |
| HERMAN RAMIREZ, | ) | No. 6902 - April 25, 2014 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: William G. Royce, Anchorage, and Kenneth D. Albertsen, Palmer, for Appellant. Richard L. Harren, Law Offices of Richard L. Harren, P.C., Wasilla, for Appellee Alicia Totaro. Ross A. Kopperud, Palmer, for Appellee Herman Ramirez.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

PER CURIAM.
FABE, Chief Justice, dissenting.

# I. INTRODUCTION

This matter returns to us after the remand proceedings ordered in an earlier

appeal.[1] The facts underlying this dispute over a 1984 gravel lease, a later sublease, and overriding royalty payments under the sublease, are outlined in our previous decision.[2]

Relevant to this appeal, we earlier vacated a judgment in favor of Alicia Totaro, the sublease's overriding royalty interest holder, and remanded for a determination whether the original gravel lease between Herman Ramirez and Bill Nelson, doing business as Cosmos Developers, Inc., was an exclusive lease for purposes of gravel removal.[3] The superior court conducted an evidentiary hearing and found that Ramirez and Nelson intended the original gravel lease to be an exclusive lease. In context, that finding led to the conclusion that the sublease from Cosmos to AAA Valley Gravel, Inc. was exclusive and that AAA Valley Gravel's gravel extraction under the sublease triggered continued overriding royalty obligations to Totaro. Because AAA Valley Gravel had discontinued the overriding royalty payments to Totaro in 1998 when it purchased the property from Ramirez, the superior court entered judgment in favor of Totaro for nearly $1 million in past royalty payments, interest, costs, and attorney's fees.

AAA Valley Gravel appeals, arguing that the superior court erred by: (1) failing to rule that the original gravel lease's failure to mention exclusivity rendered the gravel lease non-exclusive as a matter of law; (2) implying exclusivity in the original gravel lease as a matter of law; (3) placing the burden of persuasion on the exclusivity issue on AAA Valley Gravel; (4) finding that the original gravel lease conveyed an exclusive right to extract gravel from Ramirez's property; (5) failing to find that the original gravel lease expired 10 to 12 years after its inception; and (6) failing to specify

---

[1]    *AAA Valley Gravel, Inc. v. Totaro* (*AAA Valley Gravel I*), 219 P.3d 153, 160-62 (Alaska 2009).

[2]    *Id*. at 155-59.

[3]    *Id*. at 162.

in the final judgment when the original gravel lease would terminate. Ramirez, nominally an appellee in this appeal, also contends that the superior court erred; Ramirez essentially joins in most of AAA Valley Gravel's arguments.[4]

For the following reasons, we affirm the superior court's judgment.

## II. DISCUSSION

1. We are not persuaded by AAA Valley Gravel's argument that, as a matter of law, a non-integrated written lease agreement failing to mention exclusivity is non-exclusive. In *AAA Valley Gravel I*, we implicitly held such silence is not dispositive by remanding for fact-finding on exclusivity.[5] Fact-finding would have been unnecessary if silence renders a lease non-exclusive as a matter of law.[6]

2. We also are not persuaded by AAA Valley Gravel's argument that the superior court implied, as a matter of law, an exclusivity provision into the original gravel lease. The superior court found, as a matter of fact, that Ramirez and Nelson intended the original gravel lease to be an exclusive lease. We therefore review the superior court's factual finding for clear error.[7]

---

[4] Totaro contends that Ramirez's brief and arguments should not be considered because: (1) Ramirez waived the exclusivity issue in the first round of proceedings, and (2) his brief is essentially an appellant's brief and was thus filed late. We disagree with Totaro on this point and do consider Ramirez's arguments on the merits.

[5] 219 P.3d at 160-62.

[6] *See also* discussion *infra*, pp. 7-8 and related notes.

[7] *Shooshanian v. Dire*, 237 P.3d 618, 622 (Alaska 2010) ("We review the factual findings for clear error, reversing only when — 'after a thorough review of the record' — we are left with a 'definite and firm conviction that a mistake has been made.' " (quoting *Soules v. Ramstack*, 95 P.3d 933, 936 (Alaska 2004))). We reject AAA Valley Gravel's argument that we should apply a less deferential standard of

(continued...)

3. The superior court's factual finding that Ramirez and Nelson intended the original gravel lease to be exclusive is not clearly erroneous. The superior court reviewed testimonial and documentary evidence, made specific credibility findings supported by the evidence, and made many specific findings of fact supporting its ultimate finding of exclusivity. AAA Valley Gravel's argument essentially is that if the credibility findings are rejected and inferences from the factual underpinning of the case are viewed in its favor, a finding of non-exclusivity is the only logical result. But the trial court makes the credibility findings and weighs the evidence, not this court;[8] on this record we cannot say that the superior court clearly erred in its factual finding of exclusivity.

4. The superior court placed the burden of persuasion on AAA Valley Gravel to prove the original gravel lease was intended to be non-exclusive. But the superior court also ruled that even if it were Totaro's burden of persuasion to prove the original gravel lease was intended to be exclusive, she met that burden. We therefore do not need to address AAA Valley Gravel's argument that it was legal error to assign it the burden of persuasion on the exclusivity issue.[9]

5. AAA Valley Gravel's argument that the superior court erred by

---

[7]  (...continued)
review to a superior court's factual findings based on non-testimonial evidence.

[8]  We give "[p]articular deference" to a superior court's credibility determinations. *Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 166 (Alaska 2012) (citing *Wasserman v. Bartholomew*, 38 P.3d 1162, 1167 (Alaska 2002)).

[9]  *See Harris v. AHTNA, Inc.*, 193 P.3d 300, 306 (Alaska 2008) (rejecting argument that trial court erred in assigning burden of persuasion when trial court expressly concluded that result was same with alternative burden of persuasion assignment).

failing to find the lease expired 10 to 12 years after inception also fails. We touched on this issue in the first appeal.[10] The lease provides that it remains in effect for as long as it is economically feasible to take gravel from the property.[11] The superior court found after the first trial that the parties intended the lease to expire when either: (1) gravel mining was no longer economically feasible; or (2) the property was suitable for residential development, whichever came first.[12] But the superior court's final judgment stated only that the lease should be specifically performed "until it is terminated by its terms or by agreement of the parties."[13] Totaro cross-appealed this issue, arguing that the superior court's statement that the lease would terminate when the property was suitable for residential development was dicta because the interplay between the "mining no longer economically feasible" and "suitable for residential development" criteria was not litigated.[14] Agreeing with Totaro that the issue did not appear to have been a focal point of the litigation and pointing to the language of the final judgment, and given our remand on the exclusivity question, we determined that the superior court's expression of the lease termination criteria was not binding and would have to be resolved later.[15]

After remand, when addressing AAA Valley Gravel's renewed argument that the lease was intended to expire 10 to 12 years after inception, the superior court stated:

---

[10]  219 P.3d at 167.

[11]  *Id*.

[12]  *Id*.

[13]  *Id*.

[14]  *Id*.

[15]  *Id*.

The issue raised at trial was whether the lease had a definite term, and if so, whether that term was 10 years. This court ruled that the lease had a definite term, but that the parties did not adopt a 10-year limit. Th[is] court then articulated what it understood to be the actual term. No one appealed the first two holdings; the third ruling was at issue on appeal. And the Alaska Supreme Court agreed . . . that it was not necessary to address precisely how to frame the actual term of the lease. It therefore effectively vacated this court's ruling as to the precise nature of the term of the lease, holding that that matter could be addressed if necessary in the future.

In short, the [Supreme] Court did not vacate this court's ruling that the lease had a definite term or that the term was not 10 years. Those rulings therefore stand. And since AAA and Mr. Ramirez did not appeal those rulings, they cannot properly argue at this point that the lease had a 10 year term. (Citation omitted).

The superior court correctly interpreted our earlier decision. AAA Valley Gravel's argument on remand that the lease expired 10 to 12 years after inception was not properly before the superior court nor is it properly before us in this second appeal, and we do not address it.

6. Finally, we do not agree with AAA Valley Gravel that the superior court erred by not including in the final judgment a specific description of when the original gravel lease would terminate. The superior court's original ruling that the lease had a definite term was not appealed and was the law of the case,[16] although the specific articulation of the termination criteria had not been adjudicated. On remand the parties did not litigate the termination criteria, other than AAA Valley Gravel's attempt to re-litigate its contention that the lease expired 10 to 12 years after inception. The lease's

---

[16] *Beal v. Beal*, 209 P.3d 1012, 1016-17 (Alaska 2009) (explaining "law of the case" doctrine generally prohibits reconsideration of issues that were or *could have been* adjudicated in previous appeal).

termination date remains for resolution by the parties, through agreement or future litigation, but its resolution is not necessary in connection with the present appeal.

At oral argument, AAA Valley Gravel tangentially raised the question of the enforceability of a lease exclusivity provision lacking a reasonable time limitation. AAA Valley Gravel's argument is difficult to discern from its briefing, but it points to a case involving a shopping center lease and suggests that exclusivity provisions with unreasonable geographic or temporal parameters are unenforceable restraints on trade.[17] This argument causes us to reflect on the substantive nature of the gravel lease in this case — although the parties did not discuss this point in the original trial, the first appeal, or the second trial after remand, a gravel lease is a kind of easement, specifically a profit.[18] A profit's exclusivity derives from the nature of the property right conveyed; the profit holder generally has the right to exclude others.[19] Conversely, exclusivity in

---

[17] *See, e.g.*, *Horton v. Uptown Partners, L.P.*, 720 N.W.2d 192 (Iowa App. 2006) (unpublished table decision) (holding exclusivity clause in lease must be reasonable in duration and scope to not be restraint on trade).

[18] *Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 735-36 & n.51 (Alaska 2000) (holding gravel mining agreement conveyed "a kind of easement, specifically a 'profit'" (citing RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.2 (2000))). The parties presented this case to the superior court and to this court as one of contract interpretation. Although there is some difference in the interpretation rules for contracts and for conveyances, had the case been presented as one of conveyance interpretation, the result (remand for trial on whether the parties intended the lease to be exclusive) likely would have been the same. *Compare AAA Valley Gravel I*, 219 P.3d at 160-62 (interpreting lease contract terms), *with Dias v. State, Dep't of Transp. & Pub. Facilities*, 240 P.3d 272, 274-75 (Alaska 2010) (interpreting easement conveyance deed terms). But, given how the parties litigated this case, we do not need to consider that question.

[19] RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.2 cmt. c (2000); 3 Rocky Mountain Mineral Law Found., AM. LAW OF MINING §82-03[3], at 82-14 (2d ed. 2013) (noting profits are presumptively exclusive).

a shopping center lease refers to the landlord's covenant not to lease other property to the tenant's competitors; it imposes a burden on the landlord's remaining property rights.[20] The rule that exclusivity covenants in such leases must be reasonable in duration as restraints on trade applies to covenants burdening the landlord's property right,[21] not to real property conveyances such as the profit granted in this case.[22] In any event, AAA Valley Gravel's argument ignores the facts that (1) the superior court determined that the lease has a defined end date, and (2) the exclusivity provision expires when the lease expires. Contrary to AAA Valley Gravel's urgings, the lease and its exclusivity provision are not endless.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the superior court.

---

[20] *See, e.g.*, *Davidson Bros. v. D. Katz & Sons*, 579 A.2d 288, 295-96 (N.J. 1990).

[21] 3 MILTON R. FRIEDMAN & PATRICK A. RANDOLPH, JR., FRIEDMAN ON LEASES § 28:1, at 28-1 (Patrick A. Randolph, Jr. ed., 5th ed. 2005); *Horton*, 720 N.W.2d 192; *Davidson Bros.*, 579 A.2d at 295-96.

[22] 8 THOMPSON ON REAL PROPERTY § 65.03(b), at 42 (David A. Thomas ed., 2d ed. 2005) (explaining landlord/tenant lease rules do not apply to profits, and attempts to apply those rules to profits are "quite obviously mistaken"). We do not, as the dissent suggests, make this point to rule as a matter of law that the lease was exclusive. Regardless of the nature of the lease, the superior court found that the parties intended it to be exclusive. Although our point does lend support to our intial remand for that finding, here it is directed to the restraint of trade issue raised by AAA Valley Gravel.

FABE, Chief Justice, dissenting.

I continue to hold the view, expressed in my dissent in the first appeal in this case, that the "hopelessly deficient" lease between Ramirez and Cosmos "cannot possibly sustain . . . [the] highly restrictive, multi-decade arrangement" that the court today enforces.[1] For the reasons explained in my first dissent and below, I would hold that the lease's silence on exclusivity is sufficient to render the lease non-exclusive as a matter of law.[2] AAA's obligation to pay royalties to Totaro ended when it purchased the property and began gravel mining as the owner; therefore, the superior court's decision holding AAA liable to Totaro should be reversed.

As the court itself noted in the first appeal, "[c]ontract interpretation generally is a question of law"[3] and involves fact-finding only when "when facially ambiguous contract language read in the context of all relevant extrinsic evidence remains ambiguous."[4] Because the plain language of the lease is not facially ambiguous on the issue of exclusivity, it was unnecessary to remand to the superior court for fact-finding on the parties' subjective intent. Despite recognizing our long-held standard on

_____

[1]    *AAA Valley Gravel, Inc. v. Totaro*, 219 P.3d 153, 168 (Alaska 2009) (Fabe, C.J., concurring in part and dissenting in part).

[2]    *Id.* at 169-70 ("Ambiguity in a contract does not arise from silence. And unambiguous contract language is not rendered ambiguous simply because the parties disagree on their intent at the time of contracting, because they advance different interpretations during the course of litigation, or because the clear meaning of the language used would work a hardship on one of the parties. By omitting any mention of exclusivity, Ramirez retained a concurrent right to mine the gravel on his property.") (internal citations omitted).

[3]    *Id.* at 160 (per curiam) (citing *Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004)).

[4]    *Id.* at 161 (citing *Little Susitna Constr. v. Soil Processing, Inc.*, 944 P.2d 20, 23 (Alaska 1997)).

contract interpretation, the court in its earlier decision strained to introduce ambiguity into the lease's silence on exclusivity, couching its conclusion in equivocal terms: "The Ramirez/Cosmos lease does not mention exclusivity, but even though silent, some of its provisions *may* make sense only if the lease had been intended to be exclusive."[5] It was inappropriate for the court to augment the lease's plain language to "create ambiguity regarding the existence of such a crucially important restriction in a lease that is otherwise completely silent on the matter."[6] Because ambiguity in a contract generally does not arise from silence,[7] especially with regard to a provision as important as exclusivity, I conclude that the lease between Ramirez and Cosmos was not exclusive. As I noted in my earlier dissent, "[j]ust as Ramirez had the right to mine the gravel pit as fee simple owner, unencumbered by the lease with Cosmos, so too did AAA enjoy the full panoply of ownership rights after the sale. When AAA secured the right to mine the pit as its owner, its obligation to pay royalties to Totaro as a sublessee ended."[8]

But the court goes further than it did in the first decision, reaching an issue today that was neither raised nor briefed by the parties. The court characterizes the

---

[5]     *Id.* at 160 (emphasis added) (footnote omitted).

[6]     *Id.* at 169 (Fabe, C.J., concurring in part and dissenting in part).

[7]     *See Nissho Iwai Europe PLC v. Korea First Bank*, 782 N.E.2d 55, 60 (N.Y. 2002) ("[A]s with all written agreements . . . ambiguity does not arise from silence, but from 'what was written so blindly and imperfectly that its meaning is doubtful.' " (citation omitted)); *Consol. Bearings Co. v. Ehret-Krohn Corp.*, 913 F.2d 1224, 1233 (7th Cir. 1990) ("Silence creates ambiguity . . . only when the silence involves a matter naturally within the scope of the contract as written. A contract is not ambiguous merely because it fails to address some contingency; the general presumption is that 'the rights of the parties are limited to the terms expressed' in the contract." (citation omitted)).

[8]     *AAA Valley Gravel*, 219 P.3d at 170 (Fabe, C.J., concurring in part and dissenting in part).

gravel lease as a type of easement, specifically a profit. But characterizing the lease as a profit does not remove the need for an express grant of exclusivity. Profits may be exclusive or nonexclusive, and "[t]he degree of exclusivity of the rights conferred by an easement or profit is highly variable."[9] The court claims that a "profit holder generally has the right to exclude others."[10] But the court fails to point to any case in which a court has held that profits are presumptively exclusive. The court's sole source of authority is a general statement from a treatise that "[a profit à prendre] creates a commercial, rather than a personal, relationship between the parties and is presumptively assignable, inheritable, and exclusive."[11] But the only cases relied on by that treatise in support of its statement involve express grants of exclusivity.[12] Indeed, other courts have held that

---

[9] RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2 cmt. c (2000).

[10] Op. at 7.

[11] 3 Rocky Mountain Mineral Law Found., AM. LAW OF MINING § 82-03[3], at 82-14 (2d ed. 2013).

[12] *Id.* (citing *Gerhard v. Stephens*, 442 P.2d 692 (Cal. 1968); *Bonner v. Okla. Rock Corp.*, 863 P.2d 1176 (Okla. 1993) (other citations omitted)). The conveyance in *Gerhard* was explicit on exclusivity, conveying "*all* petroleum, coal oil, naptha, asphalt, maltha, brea, bitumen, natural gas and other kindred or similar substances and deposits and rocks, gravels or other formations containing or yielding any of said substances," and these rights were "transferred to the corporation, its successors and assigns *forever*." 442 P.2d at 732 n.4 (emphases added). Similarly, the easement in *Bonner* read: "It is the intent and purpose of this instrument to give the Grantee, its successors and assigns, *a perpetual and exclusive right* to go upon the property to test, mine, quarry and remove such gravel, stone, rock, shale, and limestone and to process the same thereon." 863 P.2d at 1179 n.10.

These clear statements on exclusivity and duration stand in stark contrast to the vague and equivocal language in the Ramirez/Cosmos lease, and *Gerhard* and *Bonner* provide scant support for the court's claim that profits are "generally" exclusive, especially where a lease is silent on the matter.

as a general matter, "profits [à] prendres are *not* exclusive to the holder for 'the grant of a profit [à] prendre does not preclude the grantor from exercising a like right upon the land or granting such right to others also.' "[13] Of course, parties can contract for an exclusive profit, but as with other contracts, courts have rightly required clear statements of exclusivity: "A profit à prendre is a right to take something off another person's land; such a right does not prevent the owner from taking the same sort of thing from off his own land; the first right may limit, but does not exclude the second. An exclusive right to all the profit of a particular kind can no doubt be granted; but such a right cannot be inferred from the language when it is not clear and explicit."[14]

Because the characterization of the lease as an easement has never been litigated by the parties, AAA and Ramirez also have not had the opportunity to argue that any exclusive servitude that may have been created by the lease must be limited to a reasonable duration: "Servitudes may be interpreted to include a reasonable durational limit . . . when the time limit lessens the chances that the servitude will operate as an unreasonable restraint on alienation or otherwise violate public policy."[15] Even if the lease could support the interpretation that it granted an exclusive profit, the reasonableness of the duration of exclusivity of such a profit was not raised by the parties or addressed by the superior court. And if the lease did in fact grant an exclusive profit to Cosmos, then the existence of such a servitude would certainly violate the warranty

---

[13]     *State ex rel. Rohrer v. Credle*, 359 S.E.2d 45, 47 (N.C. App. 1987) *aff'd*, 369 S.E.2d 825 (N.C. 1988) (emphasis added) (italics removed) (quoting *Builders Supplies Co. of Goldsboro, N.C., Inc. v. Gainey*, 192 S.E.2d 449, 453 (N.C. 1972)).

[14]     *Stanton v. T. L. Herbert & Sons*, 211 S.W. 353, 354 (Tenn. 1919) (citation omitted).

[15]     RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.3 Reporter's N. (2000).

deed conveyed by Ramirez as the court itself acknowledged in the first appeal: "by conveying with a warranty deed it was Ramirez, not AAA, who 'decided that it was best to proceed and to run the risk' that the Ramirez/Cosmos lease would have continued legal viability and be an encumbrance against title to the property."[16]

For these reasons, I respectfully dissent.

---

[16]     *AAA Valley Gravel*, 219 P.3d at 163.