NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

SIGURD RUTTER, )
) Supreme Court No. S-17860
Appellant, )
) Superior Court No. 1SI-19-00093CI
v. )
) MEMORANDUM OPINION
DONALD KLUTING, KEITH BRADY, ) AND JUDGMENT[*]
and CITY & BOROUGH OF SITKA, )
)
Appellees. ) No. 1866 – December 22, 2021
)

Appeal from the Superior Court of the State of Alaska, First Judicial District, Sitka, Trevor Stephens, Judge.

Appearances: Sigurd Rutter, pro se, Sitka, Appellant. Brian E. Hanson, Municipal Attorney, Sitka, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, and Borghesan, Justices.

## I. INTRODUCTION

A tour operator appeals the superior court's decision in his lawsuit against a municipality and some of its employees. His complaint alleged generally that the municipality treated him unfairly and interfered with his business. The superior court found for the defendants on each count it identified. We affirm the superior court decision.

---

[*] Entered under Alaska Appellate Rule 214.

## II.    FACTS AND PROCEEDINGS

Sigurd Rutter is a taxi and tour driver in Sitka.  For a number of years he had a commercial operator permit from the City and Borough of Sitka, authorizing him to run his taxi and tour business on city property at the Harrigan Centennial Hall.  Cruise ship passengers wishing to tour Sitka are directed to Harrigan Hall to arrange a tour or to meet the driver of their previously arranged tour.  The majority of tourists who visit Sitka in the summer come on cruise ships.

Every operator that carries out any part of a tour business on city property is required to buy an annual commercial operator permit for $400.[1]  The Sitka General Code also limits the size and location of operators' signs, limits the numbers of commercial vehicles allowed at Harrigan, and sets penalties for violations of the ordinances.[2]  The ordinance makes the Harrigan Hall manager responsible for "enforcing existing regulations and setting limits and rules as necessary" to regulate commercial traffic.[3]  Donald Kluting was the Harrigan Hall manager in 2018 and 2019.  The Sitka General Code also authorizes the city administrator to revoke commercial operators' permits for noncompliance with any permit term, regulation, or applicable law.[4]  Keith Brady was the city administrator in the years relevant to this appeal.

At some point before August 2018 Rutter had disagreements with two other vendors and made complaints to Kluting, which led to tension between Rutter and Kluting.  Rutter accused one vendor of interfering with his business and another of

---

[1]    Sitka General Code (SGC) 6.19.030(B), (D).

[2]    *Id.* at .030(C)(2), .030(D), .030(G), .040(B)(3).

[3]    *Id.* at .040(A), (B).

[4]    *Id.* at .030(J).

harassing his wife. Kluting investigated the complaints against the first vendor but did not find any violation. Rutter and his wife believed that Kluting did not investigate the other complaints.

In August 2018 Kluting fined Rutter $100 for violating the terms of his permit. Kluting assessed the fine for "fraud or misrepresentation" after reports that Rutter had misled a group of tourists to believe he was another taxi driver, with whom they had arranged a tour. Kluting also warned Rutter that "[a]ny repeat violation" could result in a larger fine and revocation of his commercial permit. Rutter appealed the fine to Brady, the city administrator.[5]

About a month later Rutter went to City Hall to complain about the fine. The city attorney reported that Rutter was rude and profane, berating Kluting and threatening to sue the city. A few days later Kluting filed a police report after Rutter blocked his car in a parking lot, made a profane gesture, and appeared to write down Kluting's license plate number.

A week later Rutter reported to Kluting that the vendor he had complained about was interfering with his business. Kluting investigated Rutter's complaint but determined that Rutter had actually yelled at that vendor in front of tourists after she directed a group of them to Rutter's taxi. After this incident Kluting sent Rutter a letter, warning him that he risked revocation of his permit if his behavior continued.

At the end of the 2018 tourist season Kluting emailed all tour operators, soliciting their input to "reduce the congestion and enhance the safety" of everyone

---

[5]     Brady dismissed Rutter's $100 fine in early October, noting that there was not enough evidence to uphold the violation.

involved in the tour business. Kluting's email was sent to Rutter's wife's email address; neither Rutter nor his wife apparently responded to the email.

Before the start of the 2019 season Kluting invited all tour operators to a meeting about new rules that would be in effect at Harrigan Hall. Neither Rutter nor his wife attended. The new rules allowed only loading and unloading passengers at the curb near Harrigan; required tour solicitation and sales to occur away from the curb; and required tour vehicles to be parked in a nearby lot until a tour had been arranged.

After the first day of the 2019 season, Kluting received so many complaints from tour operators that he modified the rules for the second day. The modified rules required each operator "to make a choice." The operator could either occupy a space away from the curb and set up a sandwich board sign at a designated area near the hall or it could occupy a space at the curb. A taxi driver who chose to wait at the curb could use a handheld sign. The space at the curb was divided in two. Half was for loading and unloading passengers while the other half was made into a "soliciting zone."

In the days that followed Rutter complained repeatedly because he wanted a free standing sign at the curb near his cab. He told another city employee and Kluting that he would "like to kill" Kluting because of the new rules.

Rutter also complained to other tour operators about the new rules. According to one operator, Rutter was agitated and angry when he discussed the rules. That operator told Kluting that she was "concern[ed] for her safety" because Rutter had grabbed and pulled her arm, making her feel threatened. Kluting told her that he shared her concern for herself and everybody in the area around Harrigan Hall and that Rutter had threatened his life.

Kluting and the operator each obtained protective orders against Rutter. Rutter appealed the protective orders to the superior court, which affirmed each of them. He did not seek our review of those decisions.

On May 20, the same day Kluting obtained a protective order against him, Rutter filed suit against Kluting, Brady, and the city. Rutter sought "declaratory judgment and injunctive relief from certain sanctions imposed upon [his] business."

On May 31, the city revoked Rutter's commercial permit because he had "violated SGC 6.19.(J) by (1) threatening the life of a City staff member . . . (2) committing acts that would constitute disorderly conduct . . . and (3) making the Harrigan Centennial Hall vendor space unsafe to operate in." Rutter appealed the revocation and his permit was reinstated after an administrative hearing.

Rutter's lawsuit against Kluting, Brady, and the city went to trial in late June and early July 2020. Rutter represented himself, calling a half dozen witnesses and seeking to admit numerous exhibits, including many related to the protective order proceedings. Because the protective order proceedings involved many of the same participants and issues, and because Rutter was representing himself, the court admitted most of his exhibits for at least limited purposes, despite objections.

In late July the superior court issued a lengthy decision analyzing Rutter's complaint and subsequent briefing in light of the leniency due self-represented litigants.[6] The court identified 14 "at least arguably pled" causes of action: six equal protection claims, six alleged violations of SGC, a defamation claim against Kluting, and a claim that Kluting had intentionally interfered with Rutter's taxi business. The court concluded that Rutter had adequately pled claims for declaratory and injunctive relief and claims

---

[6]     *Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017).

for compensatory and punitive damages.  The court then ruled against Rutter on all claims.

Rutter appeals.

## III.    STANDARD OF REVIEW

We "review de novo questions of constitutional law and statutory construction and will 'adopt the rule of law most consistent with precedent, reason, and policy.' "[7]  "When an evidentiary ruling 'turns on a question of law, such as the "correct scope or interpretation of a rule of evidence," we apply our independent judgment.' "[8]

A trial court's factual findings are reviewed for clear error, and this court will reverse them "only when, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made."[9]  We give "[p]articular deference . . . to the superior court's credibility determinations."[10]

---

[7]     *State, Dep't of Revenue v. N. Pac. Fishing, Inc.*, 485 P.3d 1040, 1047 (Alaska 2021) (quoting *Se. Alaska Conservation Council, Inc. v. State, Dep't of Nat. Res.*, 470 P.3d 129, 136 (Alaska 2020)).

[8]     *Wahl v. State*, 441 P.3d 424, 428 (Alaska 2019) (quoting *Sanders v. State*, 364 P.3d 412, 419-20 (Alaska 2015)).

[9]     *Sanders*, 364 P.3d at 419 (quoting *Lee v. Konrad*, 337 P.3d 510, 517 (Alaska 2014)).

[10]     *Kenai Landing, Inc. v. Cook Inlet Nat. Gas Storage Alaska, LLC*, 441 P.3d 954, 963 n.32 (Alaska 2019) (alteration and omission in original) (quoting *Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 166 (Alaska 2012)).

## IV.    DISCUSSION

Rutter raises six issues on appeal.[11]   Because he continues to represent himself, we "consider [his] pleadings liberally in an effort to determine what legal claims have been raised."[12]  But even in cases involving self-represented litigants, "an argument is considered waived when the party cites no authority and fails to provide a legal theory for [an] argument."[13]

Rutter first argues that the superior court erred when it found that the city had not revoked his right to have a free standing sign under SGC 6.19.030(A) and (C)(2). The court found that Rutter had failed to prove that any city employee had told him he could not use a freestanding sign and further that Rutter could have used a freestanding sign if he was in designated space away from the curb.  The court concluded that limiting the use of such signs to spaces away from the curb did not violate SGC 6.19, and that the city actually had briefly allowed Rutter to have a freestanding sign at the curb, but withdrew permission after determining that it created a safety problem.

The superior court based its decision on the testimony offered by both sides. The court found that Kluting's testimony was more credible than that offered by Rutter. Rutter contests this finding on appeal, "[b]ut the trial court makes the credibility findings

---

[11]    We do not address Rutter's third and fourth issues on appeal.  His allegation that Kluting created a "hostile work environment" has no legal basis because Kluting was not Rutter's employer.  And the errors Rutter alleges the superior court committed relate to the protective order cases that are not part of this appeal.

[12]    *Toliver v. Alaska State Comm'n for Hum. Rts.*, 279 P.3d 619, 622 (Alaska 2012).

[13]    *Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1257 (Alaska 2007).

and weighs the evidence, not this court."[14]  We give "particular deference to the superior court's credibility determinations" when based upon oral testimony.[15]  We therefore affirm the superior court's decision that the city did not revoke Rutter's right to use a freestanding sign.

Rutter next asserts the superior court erred "in dismissing the issues surrounding the implementation and violation(s)" of SGC 6.19.040(B).  Nowhere in his brief does Rutter more clearly specify which "issues" he is challenging.[16]  Even self-represented litigants must "cite authority and provide a legal theory" so that "his or her opponent and [the] court [can] discern the [litigant's] legal argument" or else the litigant waives those issues.[17]  Rutter fails to do this; his argument is abandoned and we need not consider it.[18]

---

[14]    *AAA Valley Gravel, Inc. v. Totaro*, 325 P.3d 529, 531 (Alaska 2014); *see also Peterson v. Ek*, 93 P.3d 458, 463 (Alaska 2004) (per curiam) ("[I]t is the province of the trial court to judge witnesses' credibility and weigh conflicting evidence.").

[15]    *Kenai Landing, Inc.*, 441 P.3d at 963 n.32 (quoting *Gold Dust Mines, Inc.*, 299 P.3d at 166).

[16]    And if the "issues" relate to Kluting's authority to limit the number of taxis allowed at the curb, the superior court concluded that doing so did not violate SGC 6.19.040(B).  Rutter has not challenged that conclusion, and even if he did the superior court's conclusion is not mistaken.  *Sanders v. State*, 364 P.3d 412, 419 (Alaska 2015) (quoting *Lee v. Konrad*, 337 P.3d 510, 517 (Alaska 2014)).

[17]    *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005).

[18]    *See Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 n.7 (Alaska 1991).

Rutter also asserts that the city violated his right to equal protection under both the United States and Alaska Constitutions.[19]  But Rutter does not cite any legal authority or explain how the facts support this claim; he only makes passing mention of "the Fourteenth Amendment to the U.S. Constitution."  This argument is therefore abandoned and we need not consider it.[20]

Rutter's final argument is that the superior court erred by believing Kluting's testimony.  But as noted above, the trial court makes credibility determinations.[21]  We do not.

## V.    CONCLUSION

We AFFIRM the superior court's decision.

---

[19]    U.S. Const. amend. XIV, § 1; Alaska Const. art. I, § 1.

[20]    *Griswold v. Homer Advisory Plan. Comm'n*, 484 P.3d 120, 128 (Alaska 2021) ("[The self-represented litigant] neither cites case law nor explains how the facts support his constitutional arguments.  Because [he] failed to adequately brief his constitutional arguments, they are waived.").

[21]    *AAA Valley Gravel, Inc. v. Totaro*, 325 P.3d 529, 531 (Alaska 2014) (per curiam); *see also Peterson v. Ek*, 93 P.3d 458, 463 (Alaska 2004).